UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARLOS CUJI, on behalf of himself, FLSA Collective Plaintiffs and the Class,

                          Plaintiff,

-against-

SISTINA RESTAURANT INC d/b/a SISTINA, CARAVAGGIO, INC. d/b/a CARAVAGGIO, GUIESEPPE BRUNO,[1] and GERARDO BRUNO,

                          Defendants.

---

20cv5594 (AJN) (DF)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE ALISON J. NATHAN, U.S.D.J.:**

      In this wage-and-hour case brought by plaintiff Carlos Cuji ("Plaintiff") as a putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and a putative class action under the New York Labor Law ("NYLL"), §§ 190, *et seq.*, and 650, *et seq.*, one of the named corporate defendants – Caravaggio, Inc. d/b/a/ Caravaggio ("Caravaggio") – has moved to dismiss the Complaint against it on the ground that Plaintiff does not plausibly allege that Caravaggio was his "employer" under either federal or state law.  That motion has now been referred to this Court for a report and recommendation (Dkt. 42), and, for the reasons discussed below, I recommend that Caravaggio's motion to dismiss (Dkt. 25) be granted, with leave to Plaintiff to replead.

---

[1] Although "Guieseppe Bruno" is the spelling reflected in the caption of the Complaint, this Court notes that, in his Answer, this defendant has instead spelled his first name as "Giueseppe" (which is also how it is shown on the Docket of this action), and, in the restaurant websites referenced by the parties in connection with the pending motion, it is spelled yet a third way – as "Giuseppe."  For purposes of this Report and Recommendation, this Court will adopt the spelling used by defendant in his Answer.

**BACKGROUND**

    A.    **Factual Background**

Plaintiff allegedly worked from about May 2018 to January 3, 2020 as a dishwasher at a Manhattan restaurant known as Sistina, operated by the corporate defendant Sistina Restaurant Inc. d/b/a/ Sistina ("Sistina") (*see* Class and Collective Action Complaint, dated July 20, 2020 ("Compl.") (Dkt. 1) ¶ 18), and claims that, in numerous respects, he was not paid properly for the work that he performed there (*see generally id.*).  According to the Complaint, Sistina was itself owned and operated by individual defendants Giueseppe Bruno and Gerardo Bruno (the "Individual Defendants"), who both allegedly supervised and controlled the conditions of Plaintiff's employment. (*See id.*, at 4 ¶ 2 – 5 ¶ 3.)[2]  The Complaint also alleges that the Individual Defendants similarly owned and operated Caravaggio and a restaurant bearing the "Caravaggio" name, which Defendants advertised as being Sistina's "sister" restaurant.  (*See id.*; *see also id.*, at 2-3 ¶ 7(c).)

Even though Plaintiff concedes that he never worked at the Caravaggio restaurant (*see id.*, at 5 ¶ 6), the Complaint asserts claims against both Sistina and Caravaggio, premised on an allegation that the Individual Defendants operate the two corporate entities and their respective restaurants as a "single integrated enterprise." (*Id.*, at 2 ¶ 6.)  To support their claims of liability under this theory, Plaintiff alleges that the Sistina and Caravaggio restaurants (together, the "Restaurants") "are engaged in related activities, share common ownership and have a common business purpose." (*Id.*, at 2 ¶ 7.)  More specifically, Plaintiff alleges that, "[a]s both are Italian

---

[2] The Complaint contains an error in paragraph numbering, as, after the first eight paragraphs, the numbers begin again with ¶ 1, in lieu of ¶ 9.  As a result, there are two sets of paragraphs numbered 1-8.  When referring herein to one of those duplicatively numbered paragraphs, this Court, for clarity, will cite to both the page number of the document and the paragraph number.

Food Restaurants, supplies are interchangeable among the Restaurant locations"; that "[e]mployees are interchangeable among the Restaurant locations, and in fact employees are frequently interchanged"; that "[t]he Restaurants advertise for each other on the internet"; that [b]oth websites[] refer to the other restaurant as their "sister restaurant"; that "[d]espite [their] being a very short walking distance from the other," each of the restaurants "market and advertise" for the other, its "supposed competitor"; and that "[t]he Restaurants share a common ownership and management team" and "are both owned and managed by the Individual Defendants." (*Id.*, at 3-4 ¶ 7(a)-(e).)

### B. Caravaggio's Motion To Dismiss

Caravaggio filed its motion to dismiss the Complaint on December 18, 2020. (Dkt. 25.) In support of the motion, Caravaggio also filed a memorandum of law (Memorandum of Law in Support of Defendant Caravaggio's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dated Dec. 18, 2020 ("Caravaggio Mem.") (Dkt. 26)), along with an attorney declaration (*see* undated Declaration of Adam S. Gross, Esq. in Support of Defendant Caravaggio Inc.'s Motion to Dismiss Plaintiff's Complaint, filed Dec. 18, 2020 ("Gross Decl.") (Dkt. 27)). In its motion, Caravaggio essentially argues that Plaintiff has not pleaded any facts capable of giving rise to an inference that, based on the "economic reality" of his employment, Caravaggio "exercised control over the terms and conditions of his employment," as would be necessary to hold it liable with Sistina as a joint employer. (*See* Caravaggio Mem., at 3 (discussing "economic reality" test for determining existence of employer-employee relationship); 7-8 (arguing that Plaintiff has not pleaded "any nexus between his employment and Caravaggio," and noting, for example, that the Complaint contains no allegations "that Caravaggio hired or fired

[Plaintiff], supervised and controlled his work schedule, determined his rate and method of payment, or maintained his employment records").)

Plaintiff filed a memorandum in opposition to Caravaggio's motion on January 29, 2021. (*See* Plaintiff's Memorandum of Law in Opposition to Defendant Caravaggio's Motion to Dismiss, dated Jan. 29, 2021 ("Pl. Mem.") (Dkt. 33).)  In opposition, Plaintiff argues that Caravaggio's reliance on the "economic reality test" is misplaced, as Plaintiff is not alleging that Caravaggio, as a separate entity, served as his "joint employer," but rather is claiming – as set out in the Complaint – that Sistina and Caravaggio acted as a single integrated enterprise.  (*See* Pl. Mem., at 2-3.)  Plaintiff argues that under the "single integrated enterprise" theory, an employee, "who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." (*Id.*, at 4 (citing *Bravo v. Established Burger One, LLC*, No. 12cv9044 (CM), 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013).)  Relying on *Bravo* for its recitation of the factors relevant to determining whether multiple entities may be considered a single employer, Plaintiff contends that he has adequately pleaded facts that would allow for Caravaggio to be held liable under the single integrated enterprise theory.  (*See id.*, at 4-6 (arguing sufficiency of allegations of the Restaurants' common ownership and management, of their being "marketed together," and of their "trad[ing]" of employees and "interchange[]" of supplies).)

Caravaggio filed a reply memorandum on February 12, 2021.  (*See* Reply Memorandum of Law in Further Support of Defendant Caravaggio's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dated Feb. 12, 2021 ("Caravaggio Reply Mem.") (Dkt. 34).)  In its reply, Caravaggio contends that, in the absence of

"specific factual allegations" that it exercised "formal *control*" over Plaintiff, Plaintiff's "boilerplate allegations of common ownership and interchangeable employees" are insufficient to provide a basis for "single integrated enterprise" liability. (*Id.*, at 1 (citation omitted) (emphasis in original).)

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

#### A. Rule 12(b)(6)

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. (12)(b)(6). In deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff's claim, as pleaded, is sufficient to afford him or her the opportunity to proceed on the evidence. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

Thus, the court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (citing *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal alteration and citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (internal alteration omitted) (quoting *Iqbal*, 556 U.S. at 678).

In general, on a motion to dismiss, a court must limit its consideration to: "(1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *See Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). Rule 12(d), however, provides that if, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court," then "the motion must be treated as one for summary judgment under Rule 56[,] [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

      **B.**    <u>**"Employers" Under the FLSA and NYLL**</u>

For a defendant corporation to be held liable under the FLSA, it must have served as the plaintiff's "employer," meaning that it must have acted "directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). At its core, this broad definition has been construed to mean that the corporation "possessed the power to control the worker[] in question," *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999), and "the determination of whether an employer-employee relationship exist[ed] for purposes of the FLSA

6

should be grounded in economic reality rather than technical concepts," *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (citation omitted). The same "economic reality" test has also been applied to determine whether a defendant acted in the capacity of an "employer" under the NYLL. *See* N.Y. Lab. Law §§ 190(3), 651(6) (broadly defining "employer"); *Bravo*, 2013 WL 5549495, at *5 (noting that, in effect, the NYLL "uses the same definition of an employer" as the FLSA); *Weiss v. Starr Restaurant Organization, LP d/b/a Starr Restaurants, et al.*, No. 20cv8090 (JMF), 2021 WL 3099895, at *2 (S.D.N.Y. July 21, 2021) (applying "economic reality" standard in context of NYLL claims). In determining the economic reality of the parties' relationship, a court examines "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (internal quotation marks and citation omitted).

In some instances, an employee may have multiple employers that may be held jointly and severally liable for FLSA or NYLL violations. *Olivera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 204-05 (S.D.N.Y. 2014). Where a plaintiff claims that he was employed simultaneously by two different entities, he may establish "employer" liability of each, based on one of two theories. If the plaintiff claims that the two entities served as his "joint" employers, then he must show that each exercised control over his employment, sufficient to satisfy the "economic reality" test. *See Fernandez v. HR Parking Inc.*, 407 F. Supp. 3d 445, 451 (S.D.N.Y. 2019) (noting that, when an entity other than the plaintiff's primary employer also satisfies the four requirements of the economic reality test, then that entity "must be considered a joint employer" (citation omitted)). Alternatively, the plaintiff may proceed on a theory that the two entities constituted a "single

integrated enterprise" or, effectively, a "single employer," for purposes of the relevant statutes. *See id.*, at 462 n.5 (explaining that courts use the "single integrated enterprise" doctrine "to determine whether [they] should treat a group of distinct but closely affiliated entities as a single employer" (internal quotation marks and citation omitted)); *see also, e.g.*, *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440-41 (S.D.N.Y. 2017); *Li v. Ichiro Sushi, Inc.*, No. 14cv10242 (AJN), 2016 WL 1271068, at *6 (S.D.N.Y. Mar. 29, 2016).

Two entities may be treated as a worker's single employer either "in the case of 'parent and wholly-owned subsidiary corporations, or [in the case of] separate corporations under common ownership and management.'" *Morales v. Anyelisa Rest. Corp.*, No. 18cv7641 (JGK), 2019 WL 3430106, at *2 (S.D.N.Y. July 30, 2019) (citing *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005)). Whether a group of entities qualifies as a single integrated enterprise turns on four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) (quotation marks omitted). Although no one factor is dispositive, "control of labor relations is the central concern." *Id.*, at 227 (quotation marks omitted). Even more specifically, courts have held that,

> in the end, the decisive factor as to whether a named defendant is responsible for FLSA violations as to a particular plaintiff turns on control . . . . Courts will dismiss a complaint against defendants within a broader alleged enterprise that lack a nexus suggesting *control of the plaintiff at hand*: for example, where the plaintiff fails to 'allege that [he] worked at the [other locations in the enterprise], that [he] transferred items between those stores, or that [he] communicated with anyone at those stores.'

*Yeh v. Han Dynasty, Inc.*, No. 18cv6018 (PAE), 2019 WL 633355, at *8 (S.D.N.Y. Feb. 14, 2019) (citations omitted; emphasis added); *accord Weiss*, 2021 WL 3099895, at *3; *Hong v. JP White Plains, Inc., et al.*, No. 19cv5018 (NSR), 2021 WL 1226566, at *6 (S.D.N.Y. Mar. 31, 2021).

8

The considerations that should inform a court's determination as to whether two corporations may be treated as a single employer are the same under both the FLSA and the NYLL.  *See, e.g.*, *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99 (S.D.N.Y. 2020) (analyzing whether separate entities were a "single integrated enterprise" pursuant to both the FLSA and NYLL); *Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14-CV-5269 (ARR) (JO), 2016 WL 5092588, at *16 (E.D.N.Y. Sept. 19, 2016) ("The single integrated enterprise' doctrine allows for multiple defendants to be jointly and severally liable for any FLSA and NYLL violations.").

## II. PLAINTIFF'S COMPLAINT AGAINST CARAVAGGIO SHOULD BE DISMISSED WITH LEAVE TO REPLEAD.

Caravaggio does not suggest, on its motion, that *Sistina* would not qualify as Plaintiff's "employer" under the FLSA and NYLL, and, indeed, there seems to be no dispute that, based on the economic reality of his situation, Plaintiff was employed by Sistina for purposes of both statutes.  Rather, the only question posed by the motion is whether Plaintiff has adequately alleged that *Caravaggio*, as well as Sistina, may be held liable for any underpayment Plaintiff received for his work at the Sistina restaurant.  On this question, this Court notes, as a threshold matter, that a plaintiff is the master of his own complaint,[3] and, in this case, Plaintiff has made plain – both by the language of his pleading itself and by the arguments he has made in opposition to Caravaggio's motion – that he is seeking to hold Caravaggio liable not as a "joint employer," but rather based on the theory that, for FLSA and NYLL purposes, Sistina and Caravaggio acted as a "single

---

[3] It is well established that a plaintiff is the master of his complaint, that he may decide the theory on which he proceeds, and that a defendant is "not entitled to recharacterize it."  *Phillips v. Orleans Cty.*, No. 1:18-cv-00752, 2019 WL 3088051, at *10 (W.D.N.Y. July 15, 2019); *see also Rosenfeld v. Lenich*, 370 F. Supp. 3d 335, 361 (E.D.N.Y. 2019) ("Because Plaintiff is the master of the complaint, her allegations, submissions, and underlying theories of liability and damages should be taken at face value" (internal citation and quotation marks omitted)).

integrated enterprise." (*See* Compl., at 2 ¶ 7; *see generally* Pl. Mem.)  Accordingly, the only question before the Court is whether Plaintiff's Complaint is sufficient to plead liability as to Caravaggio on this basis.

As set out above, four factors should be considered in answering this question.  (*See* Discussion, *supra*, at Section I(B); *Brown*, 756 F.3d at 226.)  Here, the relevant factors do not all point to the same outcome.  Two of those factors – "common management," and "common ownership or financial control" – weigh in favor of finding that a "single integrated enterprise" has been adequately pleaded in this case, as Plaintiff has alleged that the two corporate defendants in this case were both owned and managed by the Individual Defendants.  (*See* Compl., at 4 ¶ 2 – 5 ¶ 3; 4 ¶ 7(e).)  Yet, standing alone, allegations of common ownership (and common management of multiple entities), do not "answer the fundamental question of whether each corporate entity controlled Plaintiff[] as [an] employee[]." *Lopez v. Acme Am. Envtl. Co.*, No. 12cv511 (WHP), 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012).  In this instance, a close examination of Plaintiff's pleading reveals that his factual allegations of the Restaurant's supposedly "interrelated operations" are thin, and that he has failed to plead facts sufficient to satisfy the most important factor – "centralized control of labor relations" – especially as to him.  Under these circumstances, and in line with applicable precedent within this Circuit, Plaintiff's claim against Caravaggio should be dismissed.

As to whether Sistina's and Caravaggio's operations were "interrelated," Plaintiff pleads that "the Restaurants advertise[d] for each other on the internet," each referring to the other as its "sister restaurant."  (*Id.*, at 3 ¶ 7(c); *see also id.* ¶ 7(d) (further alleging that the Restaurants did not act as "competitor[s]," given that they marketed and advertised for each other despite their close geographic proximity).)  In their motion, Caravaggio denies the truth of the alleged cross-

advertising (*see* Caravaggio Mem., at 9 (citing Gross Decl. ¶¶ 3-4)), but Plaintiff submits evidence purportedly showing that, even if the Restaurants no longer cross-reference the other on their websites, they did so prior to this suit's having been brought (*see* Pl. Mem., at 7 (citing *id.*, Ex. A)). On this motion under Rule 12(b)(6), this Court declines to consider matters outside the Complaint and thereby to convert the motion to one for summary judgment, and will instead take as true the allegation that, at least as of the time when the action was commenced, the Restaurants cross-advertised on each other's websites.

It is, however, "not uncommon for two or more businesses that are run independently" to advertise on a common website, *Huang v. Shanghai City Corp., et al.*, 459 F. Supp. 3d 580, 587 (S.D.N.Y. 2020), and such common advertising "does not make each responsible for the labor law violations of the other," *id*.

> As other courts in this Circuit have held, the use of a single website or common marketing for a group of separate business[es] may establish that those businesses share a 'common purpose,' but those allegations do not establish 'an interrelation of operations or centralized control of labor relations with plaintiffs' identified direct corporate employer' sufficient to hold one corporation liable for the FLSA violations of the other corporation.

*Id.* (collecting cases); *see also Yeh*, 2019 WL 633355, at *8 (finding allegations that restaurants used a "centralized website" that provided "a common platform for menu information, reservations, online ordering and contact," and that various restaurant locations "distribute[d] advertising card that list[ed] the locations of each [of the other] restaurant[s]" to be insufficient to plead that defendants operated as a single enterprise); *Apolinar v. R.J. 49 REST., LLC, et al.*, No. 15cv8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016) (finding insufficient allegations that a number of defendants' restaurants were "listed on the same website" that described them as a "'family owned and operated New York Gourmet Delicatessen,' contained

links to Seamless websites, and provide[d] telephone numbers and identical menus for each location"); *Santana v. Fishlegs*, No. 13cv1628 (LGS), 2013 WL 5951438, at *3, *8 (S.D.N.Y. Nov. 7, 2013) (dismissing claim premised on theory that multiple restaurants were a single integrated enterprise, notwithstanding that the restaurants were "advertised and marketed jointly on Defendants' website").

Plaintiff additionally pleads (1) that, as both Restaurants served Italian food, "supplies [were] interchangeable among the Restaurant locations" (Compl., at 3 ¶ 7(a)), and (2) that "[e]mployees [were] interchangeable among the Restaurant locations, and in fact employees [were] frequently interchanged" (*id*. ¶ 7(b)). These allegations, though, while relevant both to the issues of the "relatedness" of the businesses' operations and to their potential centralized control of labor relations, are too conclusory to give rise to a plausible inference of a "single integrated enterprise." In fact, in another case brought in this District by the same counsel as represents Plaintiff here, the court recently rejected precisely these types of allegations in the context of a similar Rule 12(b)(6) motion. *See Weiss*, 2021 WL 3099895, at *5. In *Weiss*, the court expressly found that the plaintiff's allegation that "[e]mployees are interchanged among and transferred between [the] [d]efendants' restaurants, as well as supplies," *id.*, was "entirely conclusory," and determined that, although that allegation "would have some weight, if it were supported by the pleaded facts," it did not save the complaint from dismissal against the moving defendants where the plaintiff had failed to plead that any defendant had actually "transferred" the plaintiff or any other identified employee, *id*. (quoting *Huang*, 459 F. Supp. 3d at 589 (internal quotation marks and additional citations omitted)).

Here, the Complaint likewise includes no allegations of any specific instances where supplies were actually shared between the two Restaurants. *Cf. Flores*, 256 F. Supp. at 442

(finding allegations of single-employer liability sufficient where, *inter alia*, plaintiffs alleged that they "personally transferred items between the [r]estaurants"). Surely, Plaintiff's surmise that supplies were "interchangeable" because the Restaurants happened to serve the same general type of cuisine does not suffice to give rise to a plausible inference that any interchange of food or other supplies ever, in fact, occurred.

Similarly, the allegation that employees were "interchangeable" and "interchanged" between the Restaurants is unsupported by any particular allegations that any employees, in any type of job category, were ever required to work in more than one location, and there is certainly no allegation that Plaintiff, himself, ever worked at the Caravaggio restaurant. To the contrary, the Complaint confirms that Plaintiff worked only at the Sistina restaurant. (*See* Compl. ¶ 18 (alleging that, in or about May 2018, Plaintiff "was hired . . . to work as a dishwasher for Defendants' Sistina Restaurant . . . where he worked for the remainder of his employment"); *see also id.*, at 5 ¶ 6 (conceding that Plaintiff "did not work at both of the Restaurants")). In fact, Plaintiff does not allege that he ever so much as set foot inside the Caravaggio restaurant. In light of this, and without more, Plaintiff's allegation of "interchanged" employees is not enough to render his claims viable as against Caravaggio. *See Weiss*, 2021 WL 3099895, at *5; *see also, e.g.*, *Hong*, 2021 WL 1226566, at **2, 6 (finding that plaintiff had not sufficiently pleaded that corporate defendants constituted a single integrated enterprise, where complaint alleged that corporations "share[d] staff," but did not allege that the plaintiff "reported to, delivered, for, or had any contact with any location other than [the one location where he worked]"); *Huang*, 459 F. Supp. 3d at 589 (finding that allegation that defendants "transferred employees . . . between locations" was "undercut" by the pleaded facts that each of the plaintiffs worked at only a single location, and had not been transferred); *Kwan v. Sahara Dreams Co. II Inc.*, No. 17cv4058 (RA), 2018 WL 6655607, at *4

13

(S.D.N.Y. Dec. 19, 2018) ("The allegation that the Dream Hotel Group 'transfers employees between hotels' is alone insufficient to draw an inference of centralized control, particularly because Plaintiff herself worked at only one location and the Amended Complaint nowhere alleges that the Corporate Defendants treated their employees interchangeably or subjected them to the same policies."); *cf. Juarez v. 449 Restaurant Inc., et al.*, 29 F. Supp. 3d 363, 368 (S.D.N.Y. 2014) (finding sufficient allegations of centralized control of labor relations where complaint alleged, *inter alia*, that the plaintiff himself worked at three of defendants' diner locations); *Morales*, 2019 WL 3430106, at **1, 3 (finding allegations of single-employer liability sufficient where complaint alleged, *inter alia*, that the plaintiff was employed primarily at one restaurant, but also worked at defendants' second restaurant "on an as needed basis, including for a continuous two-month period").

This Court also notes that the Complaint in this case is lacking any other specific allegations that could plausibly support an inference of common labor control. Although the Complaint alleges, in boilerplate fashion, that the Individual Defendants each "exercise[d] the power to . . . fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff" (Compl., at 4 ¶ 2 – 5 ¶ 3), it further alleges that the Individual Defendants also "delegate[d]" these powers to unnamed "managers and supervisors" (*id.*), leaving entirely unclear whether, for example, dishwashers (including Plaintiff) and other kitchen staff at the two Restaurants were actually interviewed and hired by the same individual(s), supervised by the same staff, or paid by the same person or from a common payroll office, *see Stewart v. Hudson Hall LLC, d/b/a Mercado Little Spain, et al.*, No. 20cv885 (PGG) (SLC), 2020 WL 8732875, at **2, 6-7 (S.D.N.Y. Oct. 19, 2020) (finding same boilerplate allegations insufficient to support

14

liability of defendant corporations on "single integrated enterprise" theory), *report and recommendation adopted*, 2021 WL 735244 (Feb. 24, 2021).  Similarly, while the Complaint alleges that employees "*could* complain to" the Individual Defendants "directly regarding any of the terms of their employment," and the Individual Defendants "had the *authority* to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly" (*id.* (emphases added)), the Complaint does not actually allege that there was a centralized procedure for employees at Sistina and Caravaggio to make labor-related complaints and a unified system for addressing such complaints.

      Typically, where courts have found plaintiffs' allegations sufficient to state a claim for single-employer liability, the plaintiffs have presented far more detail regarding the defendants' purported common control of labor relations.  For example, in *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552 (S.D.N.Y. 2020), where the plaintiffs' pleading survived a motion to dismiss, the court highlighted allegations (presented by plaintiff affirmations that the court considered as supplementing the pleading) that, *inter alia*, a particular individual defendant had directed deliverymen across four business locations to fill in where needed; all deliverymen across all locations were "recorded in a book"; a particular individual defendant managed the waitstaff and would sometimes drive the prepared food "to all the various locations"; and one of the plaintiffs received a W-2 form from a business location where he did not work, *see id.*, at 559.  Similarly, in *Juarez*, referenced above, the plaintiff not only alleged that he had worked at three of the defendants' diner locations, but also pleaded that the diners were part of a "chain" (with the same or similar décor, menus, and worker uniforms); that workers were "directed and/or permitted . . . to perform work at multiple [diner] locations without retraining"; and that a single individual

15

defendant, who allegedly controlled all of the diners, was the person who had actually hired the plaintiff, spoken to him about pay increases, and provided employees with their wages. *Juarez*, 20 F. Supp. 3d at 368; *see also Bravo*, 2013 WL 5549495, at *8 (finding that plaintiffs had plausibly alleged that defendants constituted a single integrated enterprise, where, *inter alia*, complaint pleaded that plaintiffs had worked at multiple restaurant locations and been paid from a central payroll office, and that a single common manager "checked in" on more than one of the restaurants); *cf. Huang*, 459 F. Supp. 3d at 590 (discussing *Yap*, *Juarez*, and *Bravo*).

Finally, on the "decisive factor" of whether Plaintiff has alleged facts that plausibly give rise to the inference that Caravaggio's business was so tightly enmeshed with that of Sistina's that Caravaggio may be found to have exercised common control over *Plaintiff's* employment, *see Yeh*, 2019 WL 633355, at *8, Plaintiff has plainly not pleaded enough.  Even assuming Caravaggio was "part of a broader enterprise," Plaintiff does not allege that Caravaggio, through that enterprise, "had any connection to him or control of *his* employment," and thus "there is 'no basis for bringing [it] into this lawsuit which, at present, contains allegations of violations of law solely as to him.'" *Stewart*, 2020 WL 8732875, at *6 (quoting *Yeh*, 2019 WP 633355, at *8 (emphasis in original)); *see also Weiss*, 2021 WL 3099895, at *6 ("At bottom, missing from the Complaint is any allegation permitting 'the inference that' the [corporate defendants other than the plaintiff's primary employer] 'possessed the power to control' [the plaintiff]" (quoting *Huang*, 459 F. Supp. 3d at 590)).

Overall, this Court finds that Plaintiff has not pleaded facts giving rise to a plausible inference that Sistina and Caravaggio constituted a single employer, as to him, for purposes of holding Caravaggio liable for any FLSA or NYLL violations.  As Caravaggio argues in its motion, the Complaint, at bottom, does "not include a single particularized fact about Caravaggio's

16

operations or any nexus between [Plaintiff's] employment and Caravaggio," and, further, does "not set forth a *single* factual allegation which even suggests that Caravaggio," whether through common operations with Sistina or otherwise, "exercised control over the terms and conditions of [Plaintiff's] employment."  (Caravaggio Mem., at 7-8 (emphasis in original).)  Accordingly, Plaintiff's claims against Caravaggio should be dismissed.  I recommend, however, that Plaintiff be permitted to amend his Complaint so as to replead those claims, as it may be possible for Plaintiff to add specific factual allegations that, consistent with this Court's reasoning herein, would support his proceeding against Caravaggio on a "single integrated enterprise" theory.  *See, e.g.*, *Stewart*, 2020 WL 8732875, at *9 (recommending, in similar circumstances, that the plaintiff be granted leave to amend).

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend that Caravaggio's motion to dismiss the claims against it (Dkt. 25) be granted, with leave to amend.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Alison J. Nathan, United States Courthouse, 40 Foley Square, Room 2102, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Nathan.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d

298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       August 2, 2021

                                                  Respectfully submitted,

                                                  */s/ Debra Freeman*
                                                  DEBRA FREEMAN
                                                  United States Magistrate Judge

Copies to:

All counsel (via ECF)